Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ESPADA, MIÑANA & PEDROSA LAW OFFICES, PSC<br><br>Demandantes<br><br>v.<br><br>JUAN FÉLIX TRINIDAD, ET AL.<br>Demandados | KLCE202500452 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso número: BY2021CV03932<br><br>Sobre:<br>Cobro de Dinero |
| ERIC QUETGLAS JORDÁN<br><br>Demandante contra Tercero-Peticionario<br><br>v.<br><br>LUIS MIÑANA RODRÍGUEZ-FEO, JUAN R. DÁVILA DÍAZ<br><br>Demandados contra Terceros-Recurridos | | |

Panel integrado por su presidenta, la juez Domínguez Irizarry, la juez Rivera Marchand y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 16 de mayo de 2025.

Comparece la parte peticionaria, licenciado Eric Quetglas-Jordán, mediante el recurso de epígrafe y nos solicita la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 24 de marzo de 2025, notificada el 27 del mismo mes y año. En el referido dictamen, el foro primario declaró No Ha Lugar una solicitud de recusación de la Juez Teresita M. Mercado Vizcarrondo, promovida por la parte peticionaria.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto solicitado.

Número Identificador

SEN2025 _____

**I**

El 29 de septiembre de 2021, Espada Miñana & Pedrosa Law Offices, PSC, (EMP), representado por el licenciado Juan R. Dávila Díaz (licenciado Dávila Díaz), incoó una *Demanda* sobre cobro de dinero en contra del licenciado Eric Quetglas Jordán h/n/c Quetglas Law Offices (EQJ o peticionario), Juan Félix Trinidad Rodríguez y Blanca Nelly Lira, por sí y en representación de la Sociedad Legal de Gananciales compuesta por ambos (Trinidad-Nelly).[1] Alegó que, mientras estaba representado por el licenciado Luis E. Miñana Rodríguez-Feo (licenciado Miñana Rodríguez-Feo), fue contratado, junto a EQJ, por Trinidad-Nelly como representación legal de estos en varios casos, pactando a contingencia los honorarios de abogado. Según adujo, Trinidad-Nelly le solicitó la renuncia a la representación legal, motivados por una solicitud que les hiciera EQJ a esos efectos, mas no por el desempeño del bufete. En virtud de ello, EMP reclamó la suma de $812,200.00 por concepto de honorarios de abogado y $73,993.57 por reembolso de los gastos invertidos.

Por su parte, el 17 de noviembre de 2022, EQJ, por derecho propio, presentó una *Contestación, Reconvención y Demanda Contra Terceros*.[2] En su alegación responsiva, negó las alegaciones en su contra. Sostuvo que la renuncia de EMP fue por justa causa por el incumplimiento y conducta culposa desplegada en la representación conjunta de Trinidad-Nelly, según surgía de las alegaciones hechas en su contra en otros casos.

Por otro lado, en su reconvención, EQJ planteó la extinción de cualquier acreencia a EMP, al amparo del Artículo 1153 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9241; que el contrato de representación legal fue entre este último y EQJ, no con Trinidad-

---

[1] Apéndice del recurso, págs. 1-3.
[2] Íd., págs. 309-326.

Nelly, cuyo pago por honorarios era contingente al resultado de la reclamación en la cual participara, sin que ello conllevara un costo adicional para Trinidad-Nelly; que la solicitud de renuncia de representación legal que se le hizo a EMP fue debido a la conducta culposa desplegada por este, la cual no le permitía prestar una representación legal adecuada a Trinidad-Nelly.

En cuanto a la demanda contra tercero, EQJ alegó que EMP, así como los licenciados Miñana Rodríguez-Feo y Dávila Díaz, actuaron en común acuerdo para planificar e implementar un esquema malicioso en abuso del derecho, al incoar la acción de epígrafe sobre las mismas controversias planteadas por EQJ en otro pleito. Según arguyó, dichas controversias debieron litigarse en aquel pleito y no en uno separado que incluyera tanto al bufete como a sus clientes. Adujo que EMP y el licenciado Miñana Rodríguez-Feo, por medio del licenciado Dávila Díaz, cometieron perjurio y fraude al tribunal en su intento de sustentar sus alegaciones con falsas representaciones. Sostuvo que, al así obrar, abusaron maliciosamente del derecho, en violación al Artículo 18 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5337. Indicó que EMP y los mencionados licenciados respondían de forma solidaria y vicaria por los daños y perjuicios que sus conductas torticeras le habían ocasionado. Por lo anterior, EQJ reclamó el pago de una indemnización por daños y perjuicios, daños punitivos, costas, interés legal aplicable y honorarios de abogado.

Luego de varias incidencias procesales, y múltiples recursos instados ante este Tribunal de Apelaciones, el 26 de diciembre de 2024, el Tribunal de Primera Instancia, por voz de la Juez Teresita M. Mercado Vizcarrondo (Juez Mercado Vizcarrondo), emitió una *Sentencia Sumaria Parcial*.[3] En esta, declaró Ha Lugar la *Moción*

---

[3] Apéndice del recurso, págs. 782-801.

*Conjunta de Sentencia Sumaria* a favor de EMP y el licenciado Miñana Rodríguez-Feo. Además, desestimó con perjuicio la reconvención y la demanda contra terceros promovidas por EQJ. A su vez, le impuso el pago de honorarios de abogado por temeridad a EQJ, por la suma de $5,000.00, más costas.

En desacuerdo, el 10 de enero de 2025, EQJ presentó una *Solicitud de Enmiendas a Determinaciones de Hechos y Sobre Determinaciones de Hechos Adicionales; y de Reconsideración.*[4] Atendida la solicitud, el foro primario la declaró No Ha Lugar, mediante *Orden* notificada el 13 de enero de 2025.[5]

Insatisfecho, el 15 de enero de 2025, EQJ instó una *Solicitud de Recusación de la Juez Teresita M. Mercado Vizcarrondo.*[6] En esencia, arguyó que la Juez Mercado Vizcarrondo actuó de forma parcializada y en perjuicio de este al: (1) modificar inexplicablemente los dictámenes previos emitidos por otro miembro de la judicatura; (2) tildarlo de deshonesto por haber citado correctamente una jurisprudencia en apoyo a uno de sus argumentos; (3) adoptar como cierta la alegación falsa de EMP de que, luego de años de trabajo, renunció a los casos donde representaba a Blanca Nelly Lira; (4) adoptar como cierta la representación engañosa realizada por EMP fuera de contexto; (5) adoptar como ciertas las horas que EMP alegó haber trabajado en los casos, aun cuando estaban controvertidas mediante declaración jurada; (6) cometer dieciocho errores manifiestos en su apreciación de la prueba, así como la aplicación errónea del derecho al dictar la segunda sentencia sumaria parcial; (7) abusar de su discreción al penalizarlo por temeridad; (8) denegar arbitrariamente la solicitud de enmiendas y reconsideración promovida por este. En virtud de ello, solicitó la inhibición de la Juez

---

[4] Apéndice del recurso, págs. 802-855.
[5] Íd., págs. 856-857.
[6] Íd., págs. 858-878.

Mercado Vizcarrondo. En la alternativa, solicitó la recusación de esta.

Pendiente lo anterior, el 23 de enero de 2025, EQJ presentó una *Segunda Solicitud de Enmiendas a Determinaciones de Hechos y Determinaciones de Hechos Adicionales; y de Reconsideración.*[7] Por su parte, el 25 de enero de 2025, EMP se opuso a la solicitud de reconsideración.[8]

Por otro lado, el 3 de febrero de 2025, EQJ sometió una *Queja* ante la Oficina de Administración de los Tribunales (OAT), relacionada al manejo del caso de epígrafe.[9]

Evaluada la solicitud de recusación, el 24 de marzo de 2025, notificada el 27 del mismo mes y año, el foro *a quo* emitió la *Resolución* que nos ocupa, por voz de la Jueza Wanda Cintrón Valentín, mediante la cual declaró No Ha Lugar el referido petitorio.[10] El foro de origen indicó que, tras evaluar el expediente del pleito, no encontró indicio de prejuicio o parcialidad de la Juez Mercado Vizcarrondo en cuanto a EQJ o cualquier otro elemento que requiriera su inhibición o recusación en el caso de autos. Enfatizó que tampoco observó que la Juez Mercado Vizcarrondo incurriera en conducta indebida, que requiriera la referida inhibición o recusación. Concluyó que la moción de recusación promovida por EQJ no adujo hechos que demostraran un prejuicio o parcialidad de la Juez Mercado Vizcarrondo contra este, ni estaban presentes los elementos que arrojaran duda o tuvieran apariencia de impropiedad sobre la imparcialidad de la mencionada juzgadora en el trámite del caso.

El foro recurrido señaló que la mayoría de las alegaciones de parcialidad realizadas en contra de la Juez Mercado Vizcarrondo

---

[7] Apéndice del recuso, págs. 880-947.
[8] Íd., págs. 951-954.
[9] Íd., págs. 972-974.
[10] Íd., págs. 955-969.

estaban relacionadas a la inconformidad de EQJ con la forma en que la Juez interpretó los hechos presentados con relación a la solicitud de sentencia sumaria, así como su aplicación del derecho a estos. Puntualizó que los planteamientos de EQJ se resumían en que la Juez Mercado Vizcarrondo se equivocó en determinar, como hechos probados, aquellos que EQJ entendía que no lo eran y que constituían una mentira de la parte opositora. Expresó que, en ninguna de las ocasiones en las que EQJ incluyó esa expresión en su escrito, identificaba cuáles eran esas "inclinaciones personales" que presuntamente motivaron las actuaciones de la Juez.

Conforme a lo anterior, el tribunal de instancia aclaró que el hecho de que un nuevo juzgador asignado a un caso tenga su propia óptica de los hechos, ello, por sí solo, no implicaba parcialidad contra ninguna de las partes. Razonó que, en cualquier caso, si alguna de las partes entendía que la determinación de la nueva juzgadora asignada al pleito era incorrecta en derecho, procedía presentar un recurso ante el Tribunal de Apelaciones para que dicho Foro determinara la corrección de lo dictaminado por el foro de instancia. En vista de lo anterior, resolvió que bajo ningún supuesto había fundamento para la recusación, pues de los incidentes judiciales señalados por EQJ no surgía que la Juez Mercado Vizcarrondo actuara indebidamente o que estuviera parcializada en su contra. Coligió que la mencionada Juez tomó una determinación judicial de acuerdo con lo que entendía procedía conforme a las Reglas de Procedimiento Civil aplicables, en particular a la solicitud de sentencia sumaria, así como a lo requerido por las circunstancias del pleito y nuestro ordenamiento jurídico. En específico, el foro *a quo* determinó lo siguiente:

> En resumen, no surge del expediente, que las determinaciones tomadas por la Jueza Mercado Vizcarrondo dentro [del] trámite procesal del caso, en particular sobre la solicitud de sentencia sumaria parcial y la "SOLICITUD DE ENMIENDAS A

DETERMINACIONES DE HECHOS Y SOBRE DETERMINACIONES DE HECHOS ADICIONALES; Y DE RECONSIDERACIÓN", constituyan una conducta indebida, contraria a los Cánones de Ética Judicial o producto de parcialidad o prejuicio. Por el contrario, las determinaciones tomadas por la Jueza Mercado Vizcarrondo[,] cuestionadas por el licenciado Quetglas Jordán, independientemente de su corrección, resultan consistentes con las disposiciones aplicables de las Reglas de Procedimiento Civil. Además, reflejan un trámite fluido y oportuno de los asuntos según se han ido suscitando en el caso. Contrario a lo alegado en la solicitud de recusación juramentada, más bien, reflejan cumplir de forma ordinaria con los requerimientos del ordenamiento procesal civil. Así las cosas, la inconformidad del licenciado Quetglas Jordán con las determinaciones judiciales de la Jueza Mercado Vizcarrondo no constituyen fundamento válido para la recusación de [e]sta en este caso, en ausencia de otra conducta que denote algún prejuicio o parcialidad. En vista de lo anterior, procede denegar la solicitud de recusación presentada por el licenciado Quetglas Jordán, por no tener fundamento legal, ni fáctico que lo justifique.

El 2 de abril de 2025, el foro juzgador emitió y notificó una *Orden* mediante la cual, en lo pertinente, expresó lo siguiente: "Nada que proveer en cuanto a la Segunda Solicitud de Determinaciones Adicionales y Reconsideración [...]. Las Reglas de Procedimiento Civil no proveen en cuanto a esto".[11]

Inconforme, el 25 de abril de 2025, la parte peticionaria acudió ante nos mediante el recurso de epígrafe y realizó los siguientes señalamientos de error:

> Erró la Juez Cintrón Valentín al tratar los planteamientos de imparcialidad del Lcdo. Quetglas como una mera inconformidad con los dictámenes de la de la *[sic]* Juez Mercado Vizcarrondo.
>
> Erró la Juez Cintrón Valentín al concluir que no se alegan hechos concretos que arrojen duda sobre su imparcialidad de la Juez Mercado Vizcarrondo.
>
> Erró la Juez Cintrón Valentín al concluir que las determinaciones de la Juez Mercado Vizcarrondo resultan consistentes con las Reglas de Procedimiento Civil.
>
> Erró la Juez Cintrón Valentín al concluir que el Lcdo. Quetglas tiene un remedio adecuado para recurrir sobre los dict[á]m[e]nes de la Juez Mercado Vizcarrondo.

---

[11] Apéndice del recurso, págs. 970-971.

En cumplimiento con nuestra *Resolución* del 29 de abril de 2025, la parte recurrida compareció mediante *Oposición a expedir auto de certiorari* el 14 de mayo del año corriente.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

> [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios

evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra. Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró,* 165 DPR 324, 335 esc. 15 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty,* supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

La parte peticionaria plantea en su primer señalamiento de error que el Tribunal de Primera Instancia incidió al interpretar sus planteamientos de imparcialidad como una inconformidad con los dictámenes de la Juez Mercado Vizcarrondo. En su segundo señalamiento de error, sostiene que el foro primario erró al concluir que no se alegan hechos concretos que arrojen duda sobre la imparcialidad de la Juez Mercado Vizcarrondo. Como tercer

señalamiento de error, arguye que el foro *a quo* incidió al concluir que las determinaciones de la Juez Mercado Vizcarrondo resultan consistentes con las Reglas de Procedimiento Civil. En su cuarto y último señalamiento de error, alega que el foro de origen erró al concluir que tiene un remedio adecuado para recurrir sobre los dictámenes emitidos por la Juez Mercado Vizcarrondo.

Luego de un examen sosegado del expediente ante nos, colegimos que no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el Tribunal de Primera Instancia. Al entender sobre los planteamientos que la parte peticionaria propone ante este Foro, concluimos que la sala de origen no incurrió en error de derecho ni en abuso de discreción al declarar No Ha Lugar la solicitud de recusación promovida por la parte peticionaria, ello a fin de que podamos soslayar la norma de abstención judicial que, en dictámenes como el de autos, regula el ejercicio de nuestras funciones. De un estudio ponderado del recurso a nuestro haber, no surge un ápice de prejuicio o parcialidad por parte del foro recurrido en su proceder, pues lo único que se desprende del expediente es una evidente insatisfacción del peticionario con un dictamen emitido en su contra dentro de los parámetros consagrados por las Reglas de Procedimiento Civil, cuyo remedio ha de ser buscado tocando las puertas de los Foros apelativos, mas no mediante una solicitud de recusación infundada.

Al evaluar los documentos que obran en autos, concluimos que nuestra intervención no resulta oportuna. Siendo así, y en ausencia de prueba que nos permita resolver en contrario, denegamos expedir el auto de *certiorari* que nos ocupa, al amparo de lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 de nuestro Reglamento, *supra*.

**IV**

Por los fundamentos que anteceden, denegamos la expedición del recurso de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones